We all agree that the order should be affirmed, with costs.

## THE OPENING OF ALBANY-STREET.

*Supreme Court, First District; Special Term, February,* 1858.

PROCEEDINGS FOR OPENING STREETS.*—ESTOPPEL.

The notice of application for the appointment of commissioners in proceedings to open Albany-street, in the city of New York, stated the proposed improvement to be the opening of Albany-street, from Broadway to Greenwich-street:—
*Held,* a sufficient statement of the nature and extent of the improvement.
The statute requiring an affidavit to show that the notice was posted in a conspic-

---

* In the matter of the Widening of Reade-street (Supreme Court, First District ; Special Term, December, 1857), the motion of the corporation counsel for the confirmation of the commissioners' report, was opposed by a number of counsel for various parties in interest. The grounds of objection were, that the proceedings were not regular in form in the following respects:

That the abstract had not been deposited for sixty days in the street commissioner's office, but only in the office of Mr. Devlin. [The title to the office of street commissioner was then in litigation between Mr. Devlin and Mr. Conover.]

That the report was an amended report, and that twenty days' notice had not been given of its presentation.

That the commissioners had not given thirty days' notice, that parties having objections to their abstract must send them in within that time.

That they had misled parties by giving a notice that the objections must be sent in within a time less than thirty days, and in refusing to receive objections within thirty days.

The court decided to send back the report on the last two grounds of objection, and an order was entered—"That the said motion to confirm the said report of the said commissioners be and the same is hereby denied ; and that the said report be and the same is hereby referred back to the said commissioners to be proceeded on according to law."

In the matter of the Widening of Duane-street (Supreme Court, First District ; Special Term, April, 1858), on the motion to confirm the report of the commissioners, counsel for parties in interest opposed the confirmation, on the ground, among others, that the abstract had not been filed with the street commissioner, but with one Conover.

The court held the objection untenable, saying that if it was shown that the abstract was filed in the office of the street commissioner, the requirements of the statute were carried out.

VOL. VI.—18

uous place, does not require the notice to specify the place. It is enough to state that the notice was put up, and that the place was conspicuous.

On the application for the appointment of commissioners, the power of the court is confined to two duties: to ascertain that the commissioners are proper and suitable persons, and to ascertain the regularity of the proceedings.

A distinction is to be observed between the legislative powers of a municipal corporation and the exercise of their rights over property belonging to them; and no act done by them in regard to their property, can be set up as an estoppel to restrain them from acting in matters which require legislation for the interests of the city.

The Common Council of the city of New York in 1851 passed resolutions for the opening of a street, which they amended by resolution in 1853, and under them proceedings were commenced, when in 1855 they passed a resolution directing all further proceedings to be *stayed*, and thereupon the counsel to the corporation entered an order that all further proceedings be *discontinued;* and in 1857, by resolution, they repealed the resolution of 1855 :—*Held,* that the resolution of 1851 as amended in 1853, was revived, and that it was the duty of the counsel to the corporation to proceed again under it.

It is a sufficient objection to naming a person as commissioner in such proceedings, that he has expressed opinions on a question arising in the case that, if carried out, would defeat the application.

Application for appointment of commissioners in proceedings to open Albany-street, in the city of New York.

The facts sufficiently appear in the opinion.

INGRAHAM, J.—Several objections were made on this application to the regularity of the proceedings, on account of alleged insufficiency in the notice, and the affidavits of publication by posting.

The statute requires the notice to state the nature and extent of the improvement. This is complied with when the notice states the nature of the improvement to be the opening of a street, and the extent of it to be from Broadway to Greenwich-street. It is not necessary in the notice to state the exact dimensions of the ground to be taken. The object is to give notice to the owners of what the general character of the improvement is, and how far it is to extend : which was fully done by the notice in this case.

The next objection was, that the affidavits to show that the notice was posted in a conspicuous place, do not designate the place where such notice was posted.

The answer to this is, that the law does not require that the place should be designated, although it would be better to do

so in the affidavit. It is enough for the party making the affidavit to say that the notice was put up, and that the places were conspicuous places, following the words of the statute.

If the places were named, the court might not be able to say whether the place where the notice was put was conspicuous or not. The affidavits in these particulars, as well as in some others of minor importance, were sufficient.

Various matters in regard to the policy and expediency of opening Albany-street have been eloquently urged upon the court by the counsel for Trinity Church, as well as by other counsel, with which this court has now no right to interfere. The statute confines the power of the court, on the application for the appointment of commissioners, to two duties; one is to ascertain whether the commissioners are proper and suitable persons, and the other applies to the regularity of the proceedings. Further than this, the court has no right to inquire. Could we review the action of the Common Council in regard to the policy or wisdom of opening a street, we should possess a veto power over their legislation, which this court has no right to exercise now.

Upon the coming in of the report, questions may arise and be decided by the court which have such an effect, but that can only be done after the assessments are made, and the court are duly informed as to who the parties in interest are (Embury v. Cornice, 3 *Comst.*, 511).

It is urged that the corporation, having granted to Trinity Church the land to be taken in part for this street, they are now estopped from taking this proceeding.

I had occasion to examine this question some time since in a case in which the right of the corporation in this respect was involved.

In that case the same objection was taken as in this case: my conclusion was, that no such estoppel could exist. A distinction exists between the legislative powers of the Common Council and the exercise of their rights over property belonging to them. No act done by them in regard to their property can be set up to restrain them from acting in matters which require legislation for the city interests, and no act done by them in the former capacity can deprive them of the power of passing such laws as may be deemed necessary for the public good.

This principle was long since settled in the Brick Presbyterian Church v. The City of New York (5 *Cow.*, 538), and in Coats v. The Same and Stuyvesant v. The Same (7 *Ib.*, 585, 604), where it was held that a grant of land by the corporation did not estop them from passing laws by which that land would be rendered useless for the purpose of the grant; and in the latter case that decision was applicable to this grant to Trinity Church.

The same rule applies to and decides this objection against the opponents of this application.

It is also urged in opposition to this application, that the resolution under which the application is made has been rendered inoperative by the action of the Common Council. The first resolution was passed in 1851. It was amended in 1853 by extending the opening to Broadway.

Under those resolutions proceedings were commenced, when in 1855 the Common Council ordered all further proceedings to be stayed. Upon the passage of that resolution, the counsel for the corporation entered an order to discontinue all proceedings thereon.

It is not necessary to discuss the question whether that order was properly entered, when the resolution merely directed the proceedings to be stayed. The court undoubtedly had the power to permit proceedings to be discontinued for various reasons; and supposing they had good reason for doing so in this case, that discontinuance did not extend beyond the proceeding itself. It did not repeal or affect the original resolution; and when the Common Council, by resolution of 1857, repealed the resolution directing the counsel to stay further proceedings, it became his duty to proceed under those resolutions as originally passed. The amendment of the resolution of 1851 by the resolution of 1853, was a readoption of that resolution. It was in full force when the stay of proceedings was ordered, and the repeal of that stay revived the resolution, leaving it still possessed of the same vitality that it had at its passage.

The remaining objections made to the granting of this motion rest entirely upon the merits of the opening, and should have been presented to the Common Council, and not to the court. Even if, as suggested by the counsel for Trinity Church, the opening of this street is against the law of nature and the divine law, because it is an interference with a public cemetery,

—if it be demoralizing to permit a burying-ground to be disturbed, if compensation cannot be made for the dead, whose bodies are to be removed; still none of those reasons are properly addressed to this court at this time.

The statute limits the power of the court. It gives no discretion to inquire into other matters, but confines the court, as before stated, merely to an inquiry as to the regularity of the proceedings and the selection of the commissioners.

Upon these points the papers are sufficient.

An objection taken to one of the persons named by parties interested, that he has expressed opinions on one of the questions arising in this case, which, if carried out, would entirely defeat the application, is not without weight. Such questions should be submitted to commissioners who have not become committed upon them. I am therefore prevented from naming him as a commissioner.

---

## GREEN *a.* WOOD.

*New York Superior Court; General Term, March,* 1858.

### EXAMINATION OF ADVERSE PARTY BEFORE TRIAL.

The examination of an adverse party before trial, provided for by section 391 of the Code, is a matter of right, if claimed by a party.*

An order refusing such an examination is appealable.

Whether the discretion given to the judge by the latter clause of section 391 extends to any thing more than the length of notice required,—*Query?*

If the judge has discretion to refuse the examination before trial, for good cause shown, it is not good cause for such refusal that the party, sought to be examined, prefers to testify at the trial, and offers to stipulate that he will then attend for that purpose.

---

* It has been held that these provisions of the statutes do not authorize the examination of a party on questions arising on a motion preliminary or collateral to the issue in the action, Huelin *a.* Ridner (*Ante,* 19).

There are several cases which hold that these provisions are not applicable to actions between husband and wife. (Consult Pillow *a.* Bushnell, 5 *Barb.,* 156; Arborgast *a.* Arborgast, 8 *How. Pr. R.,* 297; Smith *a.* Smith, 15 *Ib.,* 165; Sweet *a.* Sweet, 15 *Ib.,* 169; and see 170.)